UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**KEYBANK NATIONAL ASSOCIATION,**

            Plaintiff,

    vs.

**ELEMENT TRANSPORTATION LLC, f/k/a ELEMENT FINANCIAL CORP. (DELAWARE)**

and

**ELEMENT FLEET MANAGEMENT CORP., f/k/a ELEMENT FINANCIAL CORP. (ONTARIO),**

            Defendants.

Civil Action No.:

ECF Case

## COMPLAINT

KeyBank National Association, through its division Key Equipment Finance ("Key"), by and through its attorneys, Thompson Hine LLP, as and for its Complaint against Defendants Element Transportation LLC, formerly known as Element Financial Corp. (Delaware) ("Element Transportation"), and Element Fleet Management Corp., formerly known as Element Financial Corp. (Ontario) ("Element Fleet," and, together with Element Transportation, collectively, "Element"), alleges as follows:

## NATURE OF THE ACTION

1. Key and Element Transportation entered into a transaction by which Element sold and assigned to Key certain leases for Class 8 tractors (the "Contracts"). As part of this transaction, Key and Element Transportation entered into the Specification of Assigned Assets No. 1 agreement (the "Specification Agreement") which, among other things, identified the Contracts. The Specification Agreement provided that Key would receive certain payments

monthly from Element Transportation, which were the payments that Element Transportation received pursuant to the Contracts (the "Scheduled Payments"). The Specification Agreement also provided that Element Fleet would provide a Parent Guaranty to Key in order to ensure that Key would receive "perfect pay" of the Scheduled Payments.

2. This is an action for breach of contract and to obtain a declaratory judgment that the Parent Guaranty is enforceable, because Element has: (1) failed to make Key whole as the Specification Agreement requires when Key received less than was due and owing for the November 12, 2016 payment; and (2) has wrongly repudiated the contract, in direct contravention to the plain language of the Specification Agreement, by repeatedly stating that the Parent Guaranty is no longer in effect.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Element, and venue in this district is proper under 28 U.S.C. § 1391. Pursuant to the Master Sale and Assignment Agreement, Element and Key expressly agreed that Element "consents to the jurisdiction of the Federal and State courts of the State of New York for any action arising with respect to this Agreement." Master Sale and Assignment Agreement, ¶ 15, attached as Exhibit 1. This is an action or proceeding arising with respect to the Master Sale and Assignment Agreement.

## THE PARTIES

5. Key Equipment Finance, party to the Master Sale and Assignment Agreement and the Specification Agreement, is an unincorporated division of KeyBank National Association.

KeyBank National Association is a national banking association organized under the laws of the United States, with its main office and principal place of business located at 127 Public Square, Cleveland, Ohio.

6. Element Transportation LLC is a Delaware Limited Liability Company with its principal place of business, upon information and belief, in Toronto, Ontario. Element Transportation LLC is an indirect, wholly-owned, subsidiary of Element Fleet Management Corp., which is an Ontario corporation with its principal place of business in Ontario. Element Transportation LLC is the successor in interest to Element Financial Corp. (Delaware), party to the Specification Agreement. Element Fleet Management Corp. is the successor in interest to Element Financial Corp. (Ontario), who is the guarantor under the Parent Guaranty.

## FACTUAL ALLEGATIONS

### The Master Agreement

7. Key provides equipment financing services to a wide range of clients, including equipment leases and loans made to clients in the transportation industry.

8. Element, upon information and belief, offers fleet management services, including acquisition, financing, program management, and remarketing services for a variety of automobiles and specialty vehicles and equipment.

9. On September 30, 2015, Element Transportation and Key entered into the Master Sale and Assignment Agreement (the "Master Agreement"), which governed the transaction between the parties by which Element Transportation would sell and assign to Key certain leases pertaining solely to Class 8 tractors. A copy of the Master Agreement is attached as Exhibit 1.

10.     The Master Agreement provided, in relevant part, that in "exchange for [Key's] payment to [Element] of the Purchase Price . . . as consideration for all of [Element's] right, title and interest in such Contract and related Assets . . . set forth in the applicable Specification agreed to be purchased by [Key] . . ., [Element] hereby absolutely and unconditionally sells, assigns, conveys and transfers to [Key] all of [Element's] right, title and interest in and to (subject to the provisions of the Servicing Agreement) such Assets." Master Agreement, ¶ 2(b).

11.     The "Specification" was defined as "a specification of Assigned Contracts, in substantially the same form as 'Specification of Assigned Assets No. __' as set forth on Exhibit A . . . which shall set forth, among other things, each Contract and the related Data Tape Information."

12.     The Master Agreement further provides that "[Element] shall remit to [Key] any payments received by [Element] under [the] Servicing Agreement . . ." Master Agreement, ¶ 9(a)(ii).

## The Specification Agreement and Parent Guaranty

13.     Key and Element entered into the Specification Agreement on September 30, 2015. A copy of the Specification Agreement is attached as Exhibit 2 (Redacted).

14.     Like the Master Agreement, the Specification Agreement also provides that Element shall remit to Key the Scheduled Payments, which are certain amounts (payments made pursuant to the Contracts) that Element receives from the Servicer, Celadon Group, Inc. ("Celadon") under the Servicing Agreement.

15.     The Specification Agreement provides that "[Key] shall receive the amounts set forth in the column labeled 'Payment' under the 'Amortization with Scrape' table in the Assignment Schedule." Specification Agreement, ¶ 1(h).

16. In addition, the Specification Agreement provides that Element "shall be fully at risk and responsible for any nonpayment. . . ." Specification Agreement, ¶ 2(d)(i).

17. The Specification Agreement also contains a Perfect Pay Provision. *See* Specification Agreement, ¶ 2(h). Under the Perfect Pay Provision, Element Transportation ensured that Key would be timely paid all Scheduled Payments under the Contracts.

18. In connection therewith, Element Fleet provided a guaranty to Key of Element Transportation's obligations under the Perfect Pay Provision. Parent Guaranty, p. 5 of the Specification Agreement. The Parent Guaranty provides that "[u]pon failure by [Element Transportation] to pay punctually any of the Guaranteed Obligations, [Element Fleet] shall forthwith on demand by [Key] in writing pay the amount not so paid. . . ." *Id*.

19. By providing Key recourse to Element Transportation and Element Fleet, the Perfect Pay Provision (and the accompanying Parent Guaranty) allowed for the expedited execution and closing of the transaction between Element and Key prior to: (a) the amendment of certain agreements governing the Contracts that were not satisfactory to Key in their current form; and (b) Key completing due diligence and obtaining internal credit approval with respect to the Servicer, Celadon.

20. The Perfect Pay Provision provides that "[u]ntil Key (i) is satisfied that Servicer, under the Servicing Agreement, is obligated to pay all Scheduled Payments under all Assigned Contracts when due, whether or not actually received by the Servicer (such timely payment of all payments being referred to as "Perfect Pay") and (ii) completes reasonable and satisfactory due diligence . . . regarding Servicer and obtains internal credit approval with respect to Servicer (the "Due Diligence"), [Element] guarantees Perfect Pay of the payment obligations under all Assigned Contracts to [Key]." Specification Agreement, ¶ 2(h).

21.     Key agreed to "(A) review the Servicing Agreement and shall confirm in writing to [Element] that the Perfect Pay provisions are satisfactory to [Key], in its reasonable discretion, and (B) complete the Due Diligence and report such completion to [Element] in writing."  Specification Agreement, ¶ 2(h).  These were referred to as the "PP Expiration Conditions."  *Id.*

22.     The Specification Agreement provides that the Parent Guaranty would terminate on the earlier of (1) the date that Key confirms to Element, in writing, that the PP Expiration Conditions have been met; or (2) the date that Element repurchases the Contracts back from Key as provided for under the Specification Agreement.  If the PP Expirations Conditions had not been met within sixty (60) days following the closing of the transaction, Element had the right to repurchase, at its discretion, the Contracts at 101% of the then net book value of the Contracts as accurately reflected in Key's books and records.  Specification Agreement, ¶ 2(h).

23.     101% of the net book value of the contracts as accurately reflected in Key's books and records, as of November 7, 2016, is $26,767,805.21.

24.     Neither of these conditions ever occurred.

25.     Element did not purchase the Contracts back from Key.

26.     Nor were the PP Expiration Conditions met.  At the time the parties executed the Specification Agreement in September of 2015, Key expected that, after the Servicing Agreement was amended to its satisfaction and it completed Due Diligence of Celadon, Celadon would be worthy of credit approval by Key to support the transactions without the need of recourse to Element.  However, it quickly became apparent to Key, in large part based upon information that Element provided to Key, that Celadon did not and would not meet such credit standards.

27. Accordingly, since Key never confirmed in writing to Element that Key completed the Due Diligence determining that Celadon was credit worthy (which it could not do since Celadon was and continues to be clearly unable to meet appropriate standards for Key to obtain internal credit approval), the PP Expiration Conditions were never met and the Parent Guaranty remains in place and in full force and effect.

### Element's Failure to Make Payments to Key As Due

28. Pursuant to the Specification Agreement, Key was to receive a Scheduled Payment of $450,755.58 on November 12, 2016.

29. On November 12, 2016, Element Transportation paid Key only $255,580.30, which is $195,175.28 less than was due and owing to Key.

30. Pursuant to Perfect Pay Provision of the Specification Agreement, ¶ 2(h), Element Transportation was required to pay Key the $195,175.28 shortfall.

31. Element Transportation did not pay Key the $195,175.28 shortfall.

32. Additionally, when Element Transportation failed to make Key whole, Element Fleet was required to pay Key the $195,175.28 shortfall pursuant to the Parent Guaranty.

33. Element Fleet did not pay Key the $195,175.28 shortfall.

34. Moreover, Key is entitled to receive a Scheduled Payment of approximately $450,000.00 each month through April of 2022 pursuant to the Specification Agreement. To the extent Key continues to receive short payments (or receives no payments at all) and Element continues to fail to make Key whole for the payments due to Key, Key will continue to be damaged.

**Element's Repudiation of the Parent Guaranty**

35. In October of 2016, Element Financial Corporation reorganized and split into two separate publicly-traded companies, Element Fleet Management Corp. and ECN Capital Corp.

36. Upon hearing the news of the reorganization, Key contacted Element and inquired as to which entity was now the party to the Master Agreement, given the restructuring of Element.

37. When Key requested confirmation that the Parent Guaranty obligation now resided with Element Fleet Management Corp. (Ontario) as the successor entity to Element Financial Corp. (Ontario), on October 11, 2016, Jeff Tougas, Senior Counsel for Element, informed Key that "there are no longer any guarantee obligations owing from Element Financial Corp. or Element Financial Corporation."

38. The parties further communicated about the Parent Guaranty, and on October 19, 2016, Mr. Tougas reiterated that "we want to be . . . clear that there is no guarantee in effect."

39. Element has taken the position that, because Element made all of changes requested by Key to the Servicing Agreement, and Key had "adequate" time to perform and complete its Due Diligence, the Perfect Pay Provision and the Parent Guaranty are no longer in effect.

40. However, the Perfect Pay provision of the Specification Agreement ***does not*** provide any deadline by which Key must complete its review of the Service Agreement or complete its Due Diligence as to the credit worthiness of Celadon.

41. Nonetheless, Element continues to maintain that the Parent Guaranty is no longer in effect, thereby repudiating the Specification Agreement.

42. The Parent Guaranty has a value to Key equal to the net book value of the Contracts for which Element has guaranteed Perfect Pay -- $26,502,777.44. If Celadon, the Servicer, fails to make payments on the Contracts pursuant to the Servicing Agreement, Key stands to lose up to the value of the underlying Contracts (subject to recoveries from underlying collateral).

43. Additionally, because Element has repudiated the Parent Guaranty, Key must downgrade the credit rating of the transaction, which results in it having to set an additional reserve of at least $500,000.00.

## **FIRST CLAIM**

(Breach of Contract)

44. Key repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45. The Master Agreement, the Specification Agreement, and the Parent Guaranty constitute contracts between Key and Element, entered into for valuable consideration, that are valid and enforceable.

46. Pursuant to the Master Agreement and Specification Agreement, Key was entitled to receive certain payments each month, and Element agreed to pay Key any shortfall amount, should the monthly payment made to Key be less than set forth in the Specification Agreement.

47. Element Transportation materially breached ¶ 2(h) of the Specification Agreement and Master Agreement when it failed to pay Key the $195,175.28 shortfall for the November 12, 2016 payment.

48. Element Fleet materially breached its obligations pursuant to the Parent Guaranty when it failed to pay Key the $195,175.28 shortfall for the November 12, 2016 payment.

49. Key has substantially performed the material terms of the Agreements.

50.     While the Parent Guaranty technically requires Key to provide Element Fleet with a demand in writing for the amounts unpaid, such a demand by Key would be futile given Element Fleet's repeated repudiation of the Parent Guaranty.

51.     Element's failure to timely make complete payments to Key as required by the Agreements has presently directly and proximately caused damage to Key in excess of $195,175.28, or such other amount to be proven at trial, plus interest.

52.     Key anticipates that it will continue to receive short payments, or may cease receiving payments all together, and that Element will continue to fail to make Key whole. Accordingly, Key's damages for Element's breach of contract shall continue to accrue each month hereafter.

53.     Despite its obligation to pay, Element has failed and refused to remit payment to Key for the amounts owed.  Element's failure to pay constitutes a breach of the Master Sale and Assignment Agreement, the Specification of Assigned Assets No. 1, and the Parent Guaranty, all of which violates the covenant of good faith and fair dealing implied in every contract.

## **SECOND CLAIM**

(Declaratory Judgment)

54.     Key repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55.     An actual controversy exists between Key and Element concerning whether the Parent Guaranty remains in effect and the obligations of the parties with respect to a claim relating to the Guaranty that Key may reasonably be expected to assert in the future, should Element Transportation continue to refuse to remit amounts owing to Key pursuant to the Perfect Pay Provision of the Specification Agreement.

56. Pursuant to Title 28 U.S.C. § 2201, Key is entitled to judgment declaring, pursuant to the Specification Agreement, that:

A. The Parent Guaranty is in full force and effect; and

B. Element Fleet Management Corp., as successor in interest to Element Financial Corporation (Ontario), is the Parent for purposes of the Parent Guaranty and is subject to all obligations set forth therein, including guaranteeing the Perfect Pay obligations of Element set forth in Section 2(h) of the Specification Agreement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff KeyBank National Association prays for this Court to:

A. Enter judgment in favor of Key and against Element on Count I, and order Element to pay damages to Key, including pre- and post-judgment interest, for Element's breach of the Agreements;

B. Enter a declaratory judgment declaring the parties' rights and obligations as set forth herein; and

C. Award Key such other and further relief as may be just and proper.

Dated: November 17, 2016                Respectfully submitted,

                                        THOMPSON HINE LLP
                                        _____
                                        Rebecca Brazzano
                                        335 Madison Avenue, 11th Floor
                                        New York, New York 10017-4611
                                        T: 212-344-5680 / F: 212-344-6101
                                        Rebecca.Brazzano@Thompsonhine.com

>Anthony J. Rospert
>(*pro hac vice forthcoming*)
>Laura L. Watson
>(*pro hac vice forthcoming*)
>127 Public Square, 3900 Key Center
>Cleveland, Ohio 44114-1291
>T:  216-566-5500 / F:  216-566-5800
>Anthony.Rospert@Thompsonhine.com
>Laura.Watson@Thompsonhine.com
>
>*Attorneys for KeyBank National Association*