**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------ X

KEYBANK NATIONAL ASSOCIATION,              :

     Plaintiff-Counterclaim-Defendant,       :

     -against-                               :
                                             :
ELEMENT TRANSPORTATION LLC, f/k/a          :
ELEMENT FINANCIAL CORP. (DELAWARE)         :
                                             :
and                                        :
                                             :
ELEMENT FLEET MANAGEMENT CORP., f/k/a      :
ELEMENT FINANCIAL CORP. (ONTARIO),         :
                                             :
     Defendants-Counterclaim-Plaintiffs.     :
------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _01/26/2017_

No. 16 Civ. 8958

**MEMORANDUM OPINON**
**& ORDER**

**JOHN F. KEENAN, United States District Judge:**

     Plaintiff-Counterclaim-Defendant KeyBank National
Association moves the Court to seal a portion of one exhibit
appended to its complaint filed on November 17, 2016 (ECF No.
1), because it contains highly proprietary nonparty financial
information irrelevant to its claims.  KeyBank also requests
that the Court authorize the Southern District of New York Clerk
of Court's Electronic Case Filing division to deem that exhibit
and another unredacted exhibit as annexed to and part of
KeyBank's complaint.  The Court grants the motion to seal,
directs KeyBank to file the exhibit with the redactions proposed
at ECF No. 12-1, and authorizes the Clerk of Court to annex the
exhibits to KeyBank's complaint.

## I.  Background

The following facts are provided for background purposes and do not constitute findings of fact by the Court.

KeyBank seeks a declaratory judgment and to recover for a breach of contract against Defendants-Counterclaim-Plaintiffs Element Transportation LLC and Element Fleet Management Corp. The parties' unincorporated subdivisions or predecessors in interest[1] entered into a set of contracts that sold and assigned certain truck leases to KeyBank.  In order to timely close the deal, Element Transportation agreed to pay any obligations owed to KeyBank under the assigned leases until (i) KeyBank reviewed agreements between Element Transportation and the lease servicer, nonparty Celadon Group, Inc., to satisfy itself that Celadon would be responsible for payments under the assigned leases, (ii) performed due diligence and received internal credit authorization on Celadon, and (iii) confirmed in writing to Element Transportation that it had performed these duties. This agreement is known as the Perfect Pay provision.  Element Fleet, the corporate parent of Element Transportation, guarantied Element Transportation's Perfect Pay obligation under a separate Parent Guaranty.  If, after sixty days, KeyBank did

---

[1]  For clarity's sake, this background makes no distinction between KeyBank and its unincorporated subdivision Key Equipment Finance or Element Transportation's and Element Fleet's predecessors in interest, which are listed in the caption.

not perform its duties, Element Transportation could, at its discretion, repurchase the assigned leases.  Either Element Transportation's repurchase or KeyBank's confirmation in writing that it performed its duties automatically terminated Element Transportation's Perfect Pay obligations and Element Fleet's Parent Guaranty.

KeyBank alleges that it could not confirm in writing to Element Transportation that it performed its duties, because Celadon is not creditworthy.  When a November 12, 2016 payment for $450,755.58 came due under the assigned leases, Element Transportation paid only $255,580.30, leaving a $195,175.28 shortfall.  Because Element Transportation did not repurchase the assigned leases and KeyBank did not confirm in writing that it performed its duties, KeyBank contends that Element Transportation and Element Fleet are responsible for paying the $195,175.28 shortfall to KeyBank.  KeyBank alleges that Element Transportation and Element Fleet breached the contract by failing to pay.

Additionally, KeyBank seeks a declaratory judgment that the Parent Guaranty is in full effect and that Element Fleet, who did not sign the contract, is the party that the Parent Guaranty may be enforced against because it is the successor in interest to the contractor.

Finally, Element Transportation and Element Fleet answered and counterclaimed against KeyBank for breach of contract, alleging that KeyBank performed its duties but did not confirm its completion in writing as it was obligated to do. Alternatively, they argue that KeyBank breached the implied covenant of good faith and fair dealing.

KeyBank filed its complaint on November 17, 2016, and intended to append two exhibits:  Exhibit 1, the Master Sale and Assignment Agreement (unredacted), and Exhibit 2, Specification of Assigned Assets No. 1 (redacted).  Due to a technical glitch, KeyBank failed to attach either exhibit when it filed on ECF. Both exhibits were served on Element Transportation and Element Fleet. (See Answer & Counterclaim ¶¶ 1, 4.)

KeyBank seeks to seal a portion of Assignment Schedule No. 1, which is appended to the Specification of Assigned Assets No. 1.  This portion of Assignment Schedule No. 1 contains highly proprietary nonparty financial information including vehicle identification numbers, borrower's credit scores, guarantor's names, asset location, and the value of payments remaining on the leases.  Element Transportation and Element Fleet consent to KeyBank's proposed redactions. (See Letter Mot. in Support of Request to File Sealed Documents 4 (Dec. 12, 2016), ECF No. 12.)

## II.  Discussion

### A.  Legal Standard

Federal Rule of Civil Procedure 26(c) permits a court, on a showing of good cause, to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  The public has a right to access judicial documents that is rooted in both the common law and the First Amendment. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-120 (2d Cir. 2006).  Thus, if the party seeks to protect judicial documents, its showing of good cause must be sufficient to overcome the public's presumed right of access.  Judicial documents are those documents "relevant to the performance of the judicial function and useful in the judicial process." Id. at 119 (quoting United States v. Amodeo (Amodeo I), 44 F.3d 141, 145 (2d Cir. 1995)).  If the court concludes that the documents at issue are judicial documents, a presumption of access attaches, and the court must determine the weight to be given to the presumption based on a consideration of the role the documents play in the court's exercise of Article III power. Id.  A court's determination generally falls "somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. (quoting United States v. Amodeo (Amodeo II), 71 F.3d 1044, 1048 (2d Cir. 1995)).  Once

it has determined the weight of the presumption of access, the court must balance countervailing considerations including the privacy interests of the party seeking closure. Id. at 120.

Whether the First Amendment protects the public's access to certain documents may be determined in two ways.  First, under the so-called "experience and logic" approach, the court asks "whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" Id. (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)).  A determination that the documents are judicial documents generally supports a finding that they were historically open to the public. Id. Second, the court may consider the degree that the documents "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." Id. (alteration in original) (quoting Hartford Courant Co., 380 F.3d at 93)).  Even where the First Amendment protects public access, the protection is qualified and the documents may be sealed where the court makes specific, on the record findings demonstrating both that closure is essential to preserve higher values and that closure is narrowly tailored to serve that interest. Id.

B.  Application

KeyBank seeks to seal an appendix to a contract that is
irrelevant to its claims and that contains highly proprietary
personal financial information of nonparties to this dispute.
As KeyBank notes, "The information regarding individual leases
contained in Exhibit 2 has no bearing on [the Court's]
determination and will play no role in the Court's evaluation of
Key's breach of contract and declaratory judgment claims."
(Letter Mot. 2-3.)  Thus, KeyBank filed the entirety of
Assignment Schedule No. 1 to the Specification of Assigned
Assets No. 1 for completeness purposes only.

The Court questions whether such a document, which KeyBank
clearly does not intend for the Court to rely on (nor could the
Court reasonably do so) is even a judicial document. See Amodeo
I, 44 F.3d at 145 ("[T]he mere filing of a paper or document
with the court is insufficient to render that paper a judicial
document subject to the right of public access."); see id.
(quoting F.T.C. v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410
(1st Cir. 1987) for the proposition that judicial documents are
those "relevant and material to the matters sub judice")).
Because KeyBank has shown that the requested closure is
essential to preserve higher values and narrowly tailored to
serve that interest, the determination of whether an irrelevant
appendix to a concededly judicial document is itself a judicial

7

document is academic here.  Nevertheless, the appendix's
irrelevance to the issues before the Court and the absence of
KeyBank's intent that the Court consider the appendix places the
presumption of public access at the nadir of the continuum of
the weight to be given to the presumption.  KeyBank has made a
specific and particular showing of sufficiently serious injury
to overcome this weak presumption.  Namely, KeyBank asserts that
the sensitive nonparty financial information it seeks to protect
is all the data a competitor would need to determine its
valuation of the leases. (See Letter Mot. 3.)  This competitive
injury is sufficiently serious to warrant protection. See Louis
Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d
485, 511 (S.D.N.Y. 2015) (granting a motion to redact documents
containing advertising expenditures and plans, merchandising
strategies, policies, and sales); GoSMiLE, Inc. v. Dr. Johnathan
Levine, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011)
(granting a motion to seal "highly proprietary material
concerning the defendants' marketing strategies, product
development, costs and budgeting").  KeyBank has also narrowly
tailored their redactions, strictly limiting them to the portion
of the appendix containing the irrelevant nonparty financial
information.  The Court directs KeyBank to file Exhibit 2,
Specification of Assigned Assets No. 1 in the redacted form
proposed at ECF No. 12-1.

KeyBank informs the Court that it intended to file two exhibits to its complaint but that, due to a technical glitch, the exhibits are not docketed on ECF.  The complaint expressly references the exhibits and Element Transportation and Element Fleet's answer and counterclaim confirm that the exhibits were served as part of the complaint.  The Court authorizes the Clerk of Court to append Exhibit 1, the Master Sale and Assignment Agreement (unredacted), and Exhibit 2, Specification of Assigned Assets No. 1 (redacted), to KeyBank's complaint at ECF No. 1.

**SO ORDERED.**

Dated:      New York, New York
            January 2 6, 2017

                                          John F. Keenan
                                    United States District Judge

9